**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BMO HARRIS BANK N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:19-cv-4557 |
| v. | ) |
| | ) |
| BULLET TRANS CO., | ) |
| | ) |
| Defendant. | ) |

**VERIFIED COMPLAINT**

Plaintiff, BMO Harris Bank N.A., by its attorneys, complains of Defendant Bullet Trans Co. as follows:

**THE PARTIES**

1.      Plaintiff, BMO Harris Bank N.A. ("Plaintiff"), is a national banking association with its main office, as set forth in its articles of association, located in Chicago, Illinois.

2.      Defendant, Bullet Trans Co. ("Borrower"), is a corporation organized under the laws of the State of Ohio with its principal place of business located in Cincinnati, Ohio.

**JURISDICTION AND VENUE**

3.      The parties are of diverse citizenship.

4.      The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

6.      A substantial part of the events or omissions giving rise to the claims set forth in this lawsuit occurred within territorial boundaries of the Northern District of Illinois and a substantial part of property that is the subject of the action is situated within said District.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

DocID: 4832-2549-5195.1

## BACKGROUND FACTS

### The Agreements

8.     On or about July 16, 2018, Plaintiff, as lender, and Borrower, as borrower, entered into a Loan and Security Agreement (the "First Agreement"), whereby Plaintiff agreed to finance Borrower's purchase of equipment described therein for use in Borrower's business (the "First Collateral"), and Borrower agreed to pay Plaintiff $101,505.60, including interest, pursuant to the terms and conditions stated therein.  A true and correct copy of the First Agreement is attached hereto as "**Exhibit A**."

9.     On or about July 17, 2018, Plaintiff, as lender, and Borrower, as borrower, entered into a Loan and Security Agreement (the "Second Agreement"), whereby Plaintiff agreed to finance Borrower's purchase of certain equipment described therein for use in Borrower's business (the "Second Collateral"), and Borrower agreed to pay Plaintiff $157,981.80, including interest, pursuant to the terms and conditions stated therein.  A true and correct copy of the Second Agreement is attached hereto as "**Exhibit B**."

10.     On or about July 25, 2018, Plaintiff, as lender, and Borrower, as borrower, entered into a Loan and Security Agreement (the "Third Agreement"), whereby Plaintiff agreed to finance Borrower's purchase of equipment described therein for use in Borrower's business (the "Third Collateral"), and Borrower agreed to pay Plaintiff $101,304.00, including interest, pursuant to the terms and conditions stated therein.  A true and correct copy of the Third Agreement is attached hereto as "**Exhibit C**."

11.     On or about August 22, 2018, Plaintiff, as lender, and Borrower, as borrower, entered into a Loan and Security Agreement (the "Fourth Agreement"), whereby Plaintiff agreed to finance Borrower's purchase of the equipment described therein for use in Borrower's

DocID: 4832-2549-5195.1

business (the "Fourth Collateral"), and Borrower agreed to pay Plaintiff $236,846.40, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Fourth Agreement is attached hereto as "**Exhibit D**."

12. On or about September 27, 2018, Plaintiff, as lender, and Borrower, as borrower, entered into a Loan and Security Agreement (the "Fifth Agreement"), whereby Plaintiff agreed to finance Borrower's purchase of the equipment described therein for use in Borrower's business (the "Fifth Collateral"), and Borrower agreed to pay Plaintiff $67,968.00, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Fifth Agreement is attached hereto as "**Exhibit E**."

13. On or about October 3, 2018, Plaintiff, as lender, and Borrower, as borrower, entered into a Loan and Security Agreement (the "Sixth Agreement"), whereby Plaintiff agreed to finance Borrower's purchase of the equipment described therein for use in Borrower's business (the "Sixth Collateral"), and Borrower agreed to pay Plaintiff $182,391.00, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Sixth Agreement is attached hereto as "**Exhibit F**."

14. On or about December 27, 2018, Plaintiff, as lender, and Borrower, as borrower, entered into a Loan and Security Agreement (the "Seventh Agreement"), whereby Plaintiff agreed to finance Borrower's purchase of the equipment described therein for use in Borrower's business (the "Seventh Collateral"), and Borrower agreed to pay Plaintiff $186,640.46, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Seventh Agreement is attached hereto as "**Exhibit G**."

15. Hereinafter the First Agreement, Second Agreement, Third Agreement, Fourth Agreement, Fifth Agreement, Sixth Agreement, and Seventh Agreement are referred to

DocID: 4832-2549-5195.1

collectively as the "Agreements" and the First Collateral, Second Collateral, Third Collateral, Fourth Collateral, Fifth Collateral, Sixth Collateral, and Seventh Collateral, are referred to collectively as the "Collateral."

16.     Pursuant to the Agreements, Borrower granted Plaintiff a first-priority security interest in the Collateral, which includes all attachments, accessions, accessories, replacement parts, repairs and additions or substitutions thereto.  In summary, the Collateral consists of the following vehicles:

| Year | Make | Model | Description | VIN |
|------|------|-------|-------------|-----|
| 2016 | Freightliner | Cascadia Series | Tractor | 1FUJGLBG3GLGY3649 |
| 2019 | Utility | Refrigerated Vans | Trailer | 1UYVS2538K6584812 |
| 2019 | Utility | Refrigerated Vans | Trailer | 1UYVS253XK6584813 |
| 2016 | Freightliner | Cascadia Series | Tractor | 1FUJGLBG5GLGY3670 |
| 2019 | Utility | Refrigerated Vans | Trailer | 1UYVS2531K6584814 |
| 2019 | Utility | Refrigerated Vans | Trailer | 1UYVS2533K6584815 |
| 2019 | Utility | Refrigerated Vans | Trailer | 1UVYS2536K6584811 |
| 2015 | Freightliner | Cascadia Series | Tractor | 3AKJGLD59FSGB3454 |
| 2019 | Utility | Dry Vans | Trailer | 1UYVS2530K3633325 |
| 2019 | Utility | Dry Vans | Trailer | 1UYVS2533K3633321 |
| 2019 | Utility | Dry Vans | Trailer | 1UYVS2535K3633322 |
| 2019 | Utility | Dry Vans | Trailer | 1UYVS2537K3633323 |
| 2019 | Utility | Dry Vans | Trailer | 1UYVS2539K3633324 |
| 2019 | Freightliner | Cascadia Series | Tractor | 1FUJHHDR9KLKJ4533 |

17.     Plaintiff properly perfected its security interest in the Collateral by recording its lien on the Certificates of Title.  True and correct copies of the Certificates of Title for the Collateral, with exception of the title for the vehicle with the VIN ending in 3670, are attached hereto as "**Exhibit H**."  Plaintiff has requested or will request a replacement Certificate of Title for the vehicle with the VIN ending in 3670 and will supplement Exhibit H upon receipt.  In the meantime, proof of Plaintiff's lienholder status is included in Exhibit H in the form of the title

4

application and a true and correct copy of the "Current Title Information" available through the Ohio Bureau of Motor Vehicles.

18.      Under the terms and conditions of the Agreements, the failure to make a payment when due is considered an event of default.

**Default Under the Agreements**

19.      Borrower is in default under the Agreements for its failure to pay the amounts due thereunder.

20.      More specifically, Borrower failed to make the March 1, 2019 payment under the First Agreement; the February 1, 2019 payment under the Second Agreement; the February 1, 2019 payment under the Third Agreement; the February 9, 2019 payment under the Fourth Agreement; the February 1, 2019 payment under the Fifth Agreement; the February 1, 2019 payment under the Sixth Agreement; and the March 1, 2019 payment under the Seventh Agreement.

21.      Pursuant to the terms of the Agreements, the entire amounts due thereunder have been accelerated.  The principal amount due and owing after acceleration totals not less than $809,784.22.

22.      Under the Agreements, upon acceleration, Borrower is obligated to pay interest on all unpaid amounts at the rate of one and one-half percent (1 1/2%) per month or the maximum rate not prohibited by applicable law.  Interest is calculated based on a 360 day year consisting of twelve 30 day months.

23.      In addition, under the Agreements, Borrower is obligated to pay late charges and other fees due under the Agreements.

DocID: 4832-2549-5195.1

24.     In addition, under the Agreements, upon default, Borrower is obligated to pay all expenses of retaking, holding, preparing for sale, and selling the Collateral.

25.     In addition, under the Agreements, Borrower is obligated to pay the attorneys' fees and costs incurred by Plaintiff in the enforcement of its rights thereunder, including this lawsuit.

26.     Calculated as of May 24, 2019, the amount due and owing under the Agreements, including accrued interest and fees, but not including attorneys' fees and expenses or cost of collection is an amount not less than $839,650.61.

27.     Pursuant to the Agreements, upon Borrower's default thereunder, Borrower is obligated to immediately turn over to Plaintiff possession of the Collateral.

28.     Plaintiff notified Borrower of its defaults under the Agreements and made demand that Borrower surrender possession of the Collateral to Plaintiff and that Borrower pay the amounts due under the Agreements.

29.     Further, Plaintiff notified Borrower of Plaintiff's election to accelerate the balance due under the Agreements and again made written demand for possession of the Collateral.

30.     Further, on July 2, 2019, through counsel, Plaintiff made written demand for possession of the Collateral.  A true and correct copy of Plaintiff's demand letter dated July 2, 2019 is attached hereto as "**Exhibit I**."

31.     Despite express demand, Borrower has failed or refused to pay the amounts due and owing under the Agreements to Plaintiff.

32.     Despite express demand, Borrower has failed or refused to return possession of the Collateral to Plaintiff.

6

33.    The Agreements expressly provide that Plaintiff and Borrower unconditionally waive their respective rights to a jury trial of any claim or cause of action relating thereto.

34.    Plaintiff has performed any and all conditions and obligations required of it under the Agreements.

### COUNT I – Injunctive Relief

35.    Plaintiff incorporates and realleges all preceding paragraphs in this Count I.

36.    Borrower continues to possess and utilize, or is capable of utilizing, the Collateral for commercial purposes.

37.    On any given day the Collateral is located, or is capable of being located, in diverse places throughout the United States.

38.    Based upon the best knowledge, information, and belief of Plaintiff, the Collateral, or a substantial portion of the same, is based at 2863 West 95th Street, Naperville, Illinois, although due to the mobile nature of the Collateral, it is unlikely that the Collateral will be present at such location at any given time.  The exact locations of each item of the Collateral are unknown, and some units of the Collateral may be mobile at any given time.

39.    The Collateral depreciates and deteriorates as a result of its continued use by Borrower, with no commensurate value being conferred to Plaintiff in the form of payments due and owing from Borrower.

40.    Borrower has or should have in place capabilities to identify, locate, and surrender the Collateral, which capabilities may now be breaking down.

41.    Plaintiff will suffer irreparable injury for which no adequate remedy at law exists unless Borrower and other persons and firms having knowledge of this injunction are (a) enjoined from continuing to use the Collateral; (b) ordered to advise Plaintiff of the location of the Collateral; and (c) ordered to surrender the Collateral to Plaintiff.

7

WHEREFORE, Plaintiff prays that:

a.      Borrower and other persons and firms having knowledge of the injunction be temporarily, preliminarily, and permanently enjoined from using the Collateral as of the date of entry of the injunction order;

b.      Borrower be ordered to disclose to Plaintiff the precise location of the Collateral in order for Plaintiff to reclaim it;

c.      Borrower be temporarily, preliminarily, and permanently enjoined from restricting access of Plaintiff to the Collateral;

d.      Plaintiff be awarded a judgment against Borrower for any damages sustained by Plaintiff;

e.      Plaintiff be awarded its costs, attorneys' fees, and interest on all unpaid amounts due and owing; and

f.      Plaintiff be granted such other and further relief as shall be just and equitable.

### COUNT II – Specific Performance

42.      Plaintiff incorporates and realleges all preceding paragraphs in this Count II.

43.      In the event of default by Borrower under the Agreements, Borrower is obligated to return the respective units of Collateral at its expense and to any location that Plaintiff directs.

44.      In the event of default by Borrower under the Agreements, Plaintiff is entitled to take possession of the Collateral or direct Borrower to remove it to a place deemed convenient by Plaintiff.

45.      In the event of default by Borrower under the Agreements, Plaintiff is entitled to repossess and remove the Collateral, wherever located.

DocID: 4832-2549-5195.1

46.     Plaintiff has performed its obligations under the Agreements, and is ready, willing, and able to perform under the Agreements.

47.     Despite demand by Plaintiff, Borrower has failed to return the Collateral.

WHEREFORE, Plaintiff prays that:

a.      Judgment be entered in Plaintiff's favor and against Borrower directing Borrower to specifically perform their respective obligations under the Agreements, and to return and allow the removal of the Collateral;

b.      Plaintiff be awarded a judgment against Borrower for any damages sustained by Plaintiff;

c.      Plaintiff be awarded its costs, attorneys' fees, and interest on all unpaid amounts due and owing; and

d.      Plaintiff be granted such other and further relief as shall be just and equitable.

## COUNT III – Replevin/Writ of Possession

48.     Plaintiff incorporates and realleges all preceding paragraphs in this Count III.

49.     This claim is brought pursuant to Rule 64 of the Federal Rules of Civil Procedure, and the statutes, common law, and rules of the State of Illinois.

50.     Pursuant to the Agreements, Plaintiff is lawfully entitled to possession of the Collateral.

51.     The Collateral is wrongfully detained by Borrower.

52.     The Collateral has not been taken for any tax, assessment, or fine levied by virtue of any law of any state against the property of Plaintiff, or against Plaintiff, nor seized under any lawful process against the goods and chattels of Plaintiff subject to that lawful process, nor held by virtue of any order for replevin against Plaintiff.

DocID: 4832-2549-5195.1

53.     Based upon the best knowledge, information, and belief of Plaintiff, and in the absence of an inspection and assuming that the Collateral is in immediately salable condition, for purposes of setting bond only and not as an admission of value, Plaintiff estimates the value of the Collateral to be approximately $493,437.

54.     Pursuant to the Agreements, the principal garage for a substantial portion of the Collateral is located at 2863 West 95th Street, Naperville, Illinois, but the Collateral may not be present at such location at any given time.

55.     Plaintiff claims the value of the Collateral not delivered to the officer by virtue of the enforcement of an order of replevin.

WHEREFORE, Plaintiff prays that an order of replevin be entered on its behalf granting Plaintiff possession of the Collateral, and that Plaintiff be granted such other and further relief as shall be just and equitable.

## COUNT IV - Breach of Contract

56.     Plaintiff incorporates and realleges all preceding paragraphs in this Count IV.

57.     The Agreements are valid and fully enforceable contracts between Borrower and Plaintiff.

58.     Plaintiff has performed all terms and conditions to be performed by Plaintiff pursuant to the Agreements.

59.     Borrower has not performed all the terms and conditions to be performed by Borrower pursuant to the Agreements, and is in breach thereof.

60.     Plaintiff has suffered damages due to Borrower's breach.

61.     Borrower is entitled to contractual money damages from Borrower.

10

WHEREFORE, Plaintiff prays that this Court enter a judgment in its favor and against Borrower in the amounts due under the Agreements, the exact amount to be proven at or before trial, together with such other and further relief as shall be just and equitable.

Dated: July 5, 2019.                                  Respectfully submitted,

**BMO HARRIS BANK N.A.**

By:  /s/ Aaron B. Chapin
    (one of its attorneys)

Aaron B. Chapin (ARDC 6292540)
Husch Blackwell LLP
120 South Riverside Plaza
Chicago, IL 60606
Phone: 312.655.1500
Fax 312.655.1501
aaron.chapin@huschblackwell.com

## **VERIFICATION**

STATE OF IOWA        )
                             ) SS

COUNTY OF LINN      )

I, Sheila Aschenbrenner, first being duly sworn, on oath state that:

1.      I am employed by BMO Harris Bank N.A. ("Plaintiff"), as a Litigation Specialist and maintain an office at 3925 Fountain NE, Cedar Rapids, Iowa.

2.      Plaintiff is the owner of the accounts of Bullet Trans Co. ("Borrower"). I am authorized to make this Verification on behalf of Plaintiff.

3.      I am charged with administering Plaintiff's account with Borrower and am a custodian of the business records and credit files relating to the accounts of Borrower with Plaintiff. I certify that such documentation is maintained by Plaintiff in the ordinary course of its business and as a regular practice.

4.      I have read the foregoing Verified Complaint and based upon personal knowledge and the business records of Plaintiff verify that the facts stated in it are true.

_Sheila Aschenbrenner_
Sheila Aschenbrenner

Sworn to and subscribed before me this
3 day of July , 2019.

_Micki S Koepke_
Notary Public

NOTARIAL SEAL
IOWA

MICKI S KOEPKE
Commission Number 785995
My Commission Expires
9-21-2020

DocID: 4832-2549-5195.1