IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BMO HARRIS BANK N.A., ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | Case No. 19 C 4557 |
| v. ) | |
| ) | Judge John Z. Lee |
| BULLET TRANS CO., ) | |
| ) | |
| Defendant/Counter-Plaintiff. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff BMO Harris Bank N.A. ("BMO Harris") sued Defendant Bullet Trans Co. ("Bullet Trans") to enforce various loan agreements, funds from which Bullet Trans used to purchase commercial tractors and trailers. In turn, Bullet Trans has filed claims for breach of contract and false imprisonment. BMO Harris has moved to dismiss these claims, and the motion is granted for the reasons described below.

I. **Background**[1]

In 2018, BMO Harris and Bullet Trans entered into a series of loan agreements ("the Agreements") through which Bullet Trans secured financing to purchase commercial tractors and trailers for its business. Counterclaim ¶ 6, ECF

---

[1] The following facts are taken from Bullet Trans's counterclaim and are accepted as true at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

No. 21. The parties agreed that the tractors and trailers would serve as collateral under the Agreements. *Id.* ¶ 10.

Each of the Agreements specified that, in the event of default, BMO Harris could "declare the indebtedness hereunder to be immediately due and payable" ("the acceleration clauses"), "declare all other debts then owing by [Bullet Trans] to [BMO Harris] to be immediately due and payable" ("the cross-default clauses"), require Bullet Trans "to assemble the [tractors and trailers] and deliver [them] to [BMO Harris]," and "enter any premises where the [tractors and trailers] may be without judicial process and take possession thereof." *Id.* ¶ 7.

Bullet Trans subsequently "fell behind in its payments on one or more" of the Agreements. *Id.* ¶ 8. BMO Harris consequently invoked the acceleration clauses, seeking immediate payment of the amounts owed under the Agreements. *Id.* ¶ 9. Furthermore, BMO Harris engaged in self-help in an attempt to repossess at least some of the tractors and trailers. *Id.* ¶ 13.

After BMO Harris commenced this lawsuit to enforce its rights under the Agreements, Bullet Trans responded with counterclaims, alleging that BMO Harris is the party that had breached the Agreements (Count I) and that, during BMO Harris's repossession efforts, its agents falsely imprisoned either Bullet Trans's employees or employees of Bullet Trans's subcontractor (Count II). *See* Counterclaim at 21–27. BMO Harris has moved to dismiss these claims. *See* Mot. to Dismiss, ECF No. 25.

2

## II. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a counterclaim must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this way, the counterclaim must put the defendants on "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In addition, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. Analysis

### A. Bullet Trans's Breach-of-Contract Claim

Bullet Trans first contends that BMO Harris violated the Agreements by "attempting to enforce and collect on obviously invalid and unenforceable penalty clauses." Counterclaim ¶ 32. For one, Bullet Trans argues that the Agreements

3

should require BMO Harris to discount to present value the amount Bullet Trans owes under the acceleration clauses. *See, e.g.*, Resp. to Mot. to Dismiss at 2–3, ECF No. 33. But this confuses loans with leases; the principal balance Bullet Trans owes under the Agreements are already at present value. *See, e.g.*, *Principal*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "Principal" as "[t]he amount of a debt . . . *not including* interest, earning, or profits." (emphasis added)); 810 ILCS 5/3-108(b), 3-304(b)(3).

Bullet Trans also suggests that cross-default clauses are *per se* unenforceable. This is incorrect. *See* 2 Com. Asset-Based Fin. § 13:13 (2019); *Bank of Am., N.A. v. Yang*, No. 12 C 7480, 2014 WL 2208951, at *1 (N.D. Ill. May 27, 2014) (permitting lender to accelerate three loans upon debtor's default where the three loan agreements contained cross-default provisions). What is more, nowhere in the counterclaim does Bullet Trans claim that it has *not* defaulted on any of the Agreements at issue here. Thus, it is difficult to fathom why the cross-default clauses would be triggered at all.

Bullet Trans next takes issue with BMO Harris simultaneously moving to recover both the principal owed under the Agreements as well as the collateral pledged under those Agreements. *See, e.g.*, Counterclaim ¶ 10. But, as BMO Harris notes, the Uniform Commercial Code permits a secured creditor to "repossess the collateral for the purpose of protecting it and concurrently proceed to enforce the debt" or to "sue on the debt and proceed to repossess and sell the

collateral." 68A Am. Jur. 2D Secured Transactions § 443; *see* Mot. to Dismiss at 8–9.

Apart from arguing that the above-referenced clauses are unenforceable, Bullet Trans contends that BMO Harris breached the Agreements by allegedly engaging in "bad faith and dangerous repossession techniques." Counterclaim ¶ 32. But Bullet Trans does not identify any provisions in the Agreement that would place such obligations on BMO Harris in its enforcement efforts. *See, e.g.*, *Jensen v. Chi. and Western Ind. R. Co.*, 419 N.E.2d 578, 589 (Ill. App. Ct. 1981) (noting that the breach-of-contract claimant had "point[ed] to no contractual provision" requiring the counterparty to act differently than it had).

Nor can Bullet Trans rely on the implied covenant of good faith and fair dealing to hold BMO Harris liable for its allegedly aggressive repossession practices. *See* Counterclaim ¶ 32. Under Illinois law, the implied covenant of good faith and fair dealing imposes a duty "to avoid taking advantage of gaps in a contract in order to exploit the vulnerabilities that arise when contractual performance is sequential rather than simultaneous." *Bank of America, N.A. v. Shelbourne Dev. Grp., Inc.*, 732 F.Supp.2d 809, 823 (N.D. Ill. 2010) (internal quotation marks omitted); *see also Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992) (explaining that it would be bad faith for a party to invoke a contractual provision "dishonestly to achieve a purpose contrary to that for which the contract had been made"). Bullet Trans offers no argument as to how BMO Harris's enforcement efforts, which are

5

permitted by the Agreements, would trigger the implied covenant of good faith and fair dealing, let alone breach it.

For these reasons, Bullet Trans's breach-of-contract claim is dismissed.

## B.     Bullet Trans's False-Imprisonment Claim

As for its remaining claim, the Court concludes that Bullet Trans lacks standing to pursue it. Bullet Trans, as a corporate entity, has no physical form and cannot physically be confined. *Cf. White v. Wal-Mart Stores, Inc.*, No. 1-16-3238, 2019 WL 1461551, at *8 (Ill. App. Ct. Mar. 29, 2019) ("The common law tort of false imprisonment is an unreasonable restraint of an *individual*'s liberty, against his will, caused or procured by the defendant." (emphasis added) (internal quotation marks omitted)). It is thus unsurprising that Bullet Trans offers no authority suggesting that a corporate entity may properly assert a false-imprisonment claim. Indeed, numerous courts have arrived at the opposite conclusion for similar claims. *See, e.g., Ntron Int'l Sales Co., Inc. v. Carroll*, 714 F. Supp. 335, 339 (N.D. Ill. 1989) ("It is obvious to this court that an assault cannot be perpetrated on a corporation, and the lack of any authority in Illinois to the contrary supports this position."); *Microthin.com, Inc. v. Siliconzone USA, LLC*, No. 06 C 1522, 2006 WL 3302825, at *5 (N.D. Ill. Nov. 14, 2006) (corporation lacked standing to assert claims of assault and battery on behalf of its employees).

Bullet Trans has thus not met its "burden of establishing that it meets the required elements of standing" for its false-imprisonment claim. *Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996). The claim is dismissed.

6

## IV. Conclusion

For the foregoing reasons, BMO Harris's motion to dismiss is granted. Bullet Trans's counterclaims are dismissed.

**IT IS SO ORDERED.**                    **ENTERED: 6/24/20**

*[signature]*

**John Z. Lee**
**United States District Judge**